**Below is a Memorandum Decision of the Court.**

*/s/ Mary Jo Heston*

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

JESSICA CAMILLE LARIOS,

    Debtor.

PETER EULER, a single man,

    Plaintiff

  v.

JESSICA CAMILLE LARIOS,

    Defendant

Case No. 25-40532-MJH

Adversary No. 25-04044-MJH

**MEMORANDUM DECISION**

This matter came before the Court for trial on January 13, 2026, on a Complaint to Determine Nondischargeable Debt ("Complaint") filed by Peter Euler ("Plaintiff"). Pursuant to the Complaint, the Plaintiff seeks to except from discharge the amount owed by the Debtor, Jessica Camille Larios ("Defendant") pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

Based on the evidence, pleadings, and arguments submitted at trial, the Court renders the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9038.

MEMORANDUM DECISION – 1

# FINDINGS OF FACT[2]

The Defendant bought her first home in 1999 and became a real estate agent in 2003. Def. Trial Brief 4:3-4, ECF No. 12. She started a real estate investment company in 2015. *Id.* at 4:7. The Defendant is the sole owner and managing member of World Class Real Estate Solutions, LLC, a Nevada Limited Liability Company ("WCRE"), incorporated on May 26, 2020. Pl. Ex. 33. She is also the sole owner and managing member of EGE Management Group, LLC ("EGE"), a Nevada limited liability company. The Defendant describes herself as a "real estate investor, developer, builder, and asset manager specializing in Tacoma, Washington." Pl. Ex. 31. Further, she "purchase[s] and subdivide[s] property, rehabilitate[s] existing homes, and build[s] new construction single family homes on vacant land . . . and manage[s] these processes from start to finish including pulling permits with local jurisdictions, all site work, construction, and sales of finished inventory." Pl. Ex. 31.

The Plaintiff is Defendant's 74-year-old father who has been retired for 15 years. He has resided in Texas for approximately seventeen years. His prior occupations include driving a truck and working with the airlines as a ramp agent. The Plaintiff testified that he has owned five properties, and of these, he built one house, subdivided one property, and experienced code enforcement issues. The Plaintiff testified that he regarded the Defendant as having extensive real estate experience. According to the Defendant, she and the Plaintiff discussed real estate throughout her career.

The Defendant and the Plaintiff were involved in numerous real estate transactions from 2017 to 2022. The real estate transactions at issue in this adversary proceeding primarily concern real property located at 3843 East L Street, Tacoma, WA 98404, Parcel No. 5670400602 ("East L Property"); 1937 South Durango Street, Tacoma, WA 98405, Parcel No. 0220121048 ("Durango Property"); and 3834 South 19th Street, Tacoma, WA

---

[2] The parties agreed to the admission of all exhibits at trial.

98405, Parcel No. 0220121111 ("South 19th Property"). The Durango Property and South 19th Property are two of five parcels that comprise what the Defendant referred to in testimony as the "Durango Assemblage."

In September or October of 2017, the Defendant approached the Plaintiff about a loan in the amount of $170,000, that would be secured by the East L Property. The Defendant described the East L Property as vacant and land-locked. The tax assessed value in 2018 for the East L Property was $17,900. Thus, at the time of the requested loan the Plaintiff would be significantly undersecured. Def. Ex. 2. The Plaintiff testified that the Defendant represented she needed the funds to develop the property and that the Plaintiff was the only person loaning money on the project. He further testified that it was his understanding that if there were more lenders added later, he would remain in first position. According to the Plaintiff, he relied on this representation in deciding to loan the Defendant money. The Defendant disagreed with the Plaintiff's testimony. While the Plaintiff originally had a first position lien, he released this later for a security interest on the Durango Property.

The Plaintiff loaned the Defendant $170,000, and a deed of trust dated October 9, 2017 ("October 2017 Deed of Trust") was entered into between WCRE,[3] as grantor, and Plaintiff, as beneficiary, "in accordance with the terms of a promissory note of even date" and secured by the East L Property. The October 2017 Deed of Trust was recorded on November 30, 2017, under Pierce County recording number 201711300784. Pl. Ex. 2.[4] The referenced promissory note was not put into the record.

On August 17, 2018, through a Secured Promissory Note, the parties consolidated the $170,000 loan with another existing loan and new loan from the Defendant, for a total debt

---

[3] The October 2017 Deed of Trust states that WCRE is a Washington LLC rather than a Nevada LLC.

[4] Through a Modification of Deed of Trust recorded on December 15, 2017, the Defendant granted Feliciano Mercardo a security interest in the East L Property, for the original note amount of $250,000. Pl. Ex. 4.

of $377,320.50.[5] Pl. Ex. 35. Before consolidating, the Defendant testified that she gave the Plaintiff the option of keeping the $170,000 loan on the East L Property and being repaid after the house was built and sold, or loan additional funds and move the debt over to the Durango Property. The Defendant testified that the Plaintiff chose the latter option.

The Secured Promissory Note states that it is "FOR VALUE RECEIVED, which shall include a **second mortgage** on properties owned by the borrower, which shall change over time as properties are sold" and that it is "secured by a Deed of Trust of even date herewith." Pl. Ex. 35 (emphasis added). The parties' exhibits do not include a Deed of Trust dated August 17, 2018. Based on the Defendant's testimony, however, the deed of trust dated November 7, 2018 ("November 2018 Deed of Trust"), is the applicable deed of trust. This deed of trust was entered into between WCRE, as grantor, and Plaintiff, as beneficiary, to secure payment of $377,320.50, "in accordance with the terms of a secured promissory note dated August 17, 2018." Pl. Ex. 15. The property securing the note is described on attached Exhibit "A" as:

BEGINNING 792 FEET WEST AND 495 FEET SOUTH OF THE NORTHEAST CORNER OF SECTION 12, TOWNSHIP 20 NORTH, RANGE 2 EAST OF THE W.M., IN PIERCECOUNTY [sic], WASHINGTON; THENCE SOUTH 165 FEET; HENCE WEST 264; THENCE NORTH 165; THENCE EAST 264 FEET TO THE POINT OF BEGINNING.

SITUATE IN THE COUNTY OF PIERCE, STATE OF WASHINGTON.

Pl. Ex. 15. While the November 2018 Deed of Trust does not provide a common address or tax parcel number, the Defendant testified that this deed of trust gave the Plaintiff a

---

[5] The Secured Promissory Note states that the Defendant holds two promissory notes: (1) note dated September 26, 2017, in the current outstanding principal amount of $60,000, requiring interest only payments on the unpaid principal at the rate of six percent per annum, with a balloon payment due September 26, 2018; and (2) note dated October 10, 2017, in the current outstanding principal amount of $170,000, accruing interest at a monthly compounded rate of ten percent per annum, requiring no monthly payments, with a balloon payment due October 10, 2018, which at that time will be $187,801.22. The Secured Promissory Note states that it is the parties' intent to terminate the $170,000 loan 10 days early in order to roll the unpaid balance into a new consolidated loan beginning October 1, 2018, so that $187,274.29 will become part of the combined balance of the new loan at that time. The Secured Promissory Note also states that Defendant further agrees to advance an additional $130,000 to WCRE. Pl. Ex. 35.

MEMORANDUM DECISION – 4

security interest in the Durango Property. *See also* Pl. Ex. 16 (contains the same legal description as set forth in Pl. Ex. 15).

The Plaintiff testified that he never saw the November 2018 Deed of Trust. The November 2018 Deed of Trust states at the top:

After Recording, Return To:

Peter R. Euler
1018 Caprice Drive
Grand Saline, TX 75140

Pl. Ex. 15. The Plaintiff confirmed that this is his correct address.

The Plaintiff also denies ever receiving a copy of the executed Secured Promissory Note. The Plaintiff, however, proposed corrections to the draft and prepared a payment spreadsheet via email sent August 15, 2018, but dated August 14, 2018. Def. Ex. 4.

Beginning November 10, 2018, the payments on the consolidated loan were $2,201.11 per month, and all unpaid principal and interest were fully due and payable on January 10, 2024. The Secured Promissory Note contains a notarized Guaranty by Jessica Larios.[6] Pl. Ex. 35. The Guaranty contains a "**NOTICE CONCERNING ORAL AGREEMENTS**" stating "**Oral agreements or oral commitments to lend money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.**" Pl. Ex. 35 (emphasis in the original).

---

[6] In the Guaranty, Jessica Larios, as

> Guarantor hereby unconditionally, absolutely and irrevocably, as a primary Borrower and not merely as a surety, guarantees to Holder the punctual and complete payment when due, whether at or after maturity, upon acceleration or otherwise.
>
> Guarantor agrees to remain liable for any Borrower obligation regardless of any change in the time, manner or place of payment of all or any of the obligations now existing or hereafter coming into existence and arising from, by reason of, or in any way relating to any of the terms, covenants, conditions or agreements of the loan evidenced by this Secured Promissory note or any extensions of time for payment, whether in whole or in part, of the terms of the loan or on the part of Borrower to be paid, performed, or observed as applicable.

Pl. Ex. 35.

MEMORANDUM DECISION – 5

The Plaintiff admits receiving payments on the consolidated loan. He was unaware of how many payments he received and the exact date they stopped, but he testified that it was his understanding that they were interest-only payments. The Defendant testified that she made approximately 38 payments. A spreadsheet prepared by the Defendant indicates that 44 payments of $2,201.11 were made each month from March 2019 to June 2023. Def. Ex. 3.

The Plaintiff testified that he understood the new loan amount, originally secured by the Durango Property, was needed to develop the property. The Defendant stated that the funds from the consolidation loan were used to fund entitlements on the Durango Property. The Plaintiff testified that he did not care about the particulars or the profit the Defendant made, as long as he got his initial investment back plus interest and that he relied on the Defendant because she is the expert.

As stated prior, the Durango Property is one of five parcels that make up the Durango Assemblage. The Defendant testified that she purchased the five parcels that make up the Durango Assemblage for approximately $2 million. At the time, she expected to put about $4.5 million into the project and sell the properties as a whole for around $9 million. The original plan was to develop the property and build 30 plus townhomes prior to sale. Due to zoning changes and the pandemic, the Defendant testified that she had to pivot from townhomes to instead developing the property to be sold as a buildable assemblage for a 200 plus apartment complex.

On March 11, 2019, a Full Reconveyance of the October 2017 Deed of Trust on the East L Property was recorded ("Full Reconveyance"). The Full Reconveyance dated March 6, 2019, provides:

> The undersigned as trustee under that certain Deed of Trust, dated **10/9/2017**, in which **World Class Real Estate Solutions, LLC**, is grantor and **Peter R. Euler**, is beneficiary, recorded on **11/30/2017**, as Auditor's File No. 201711300784, records of **Pierce** County, Washington, having received from the beneficiary under said Deed of Trust a written request to reconvey, does hereby

> reconvey, without warranty, to the person(s) entitled thereto all of the right, title and interest now held by said trustee in and to the property described in said Deed of Trust, situated in **Pierce** County, Washington, as follows:
>
> **AS IN RECORDED DEED OF TRUST**

Pl. Ex. 6 (emphasis in original).

The Full Reconveyance states at the top:

> AFTER RECORDING MAIL TO:
> First American Title Insurance Company
> 2707 Colby Ave, Ste 601
> Everett WA 98201

Pl. Ex. 6. The Defendant also denies receiving a copy of the Full Reconveyance.

On May 7, 2019, a Real Estate Excise Tax Affidavit was recorded in Pierce County for the East L Property, listing a gross selling price of $383,500. Pl. Ex. 9. The parties testified that the Plaintiff was not paid from this sale as he no longer had a secured interest in the East L Property.

In October or November of 2019, the Defendant approached the Plaintiff about loaning WCRE $25,000. The Plaintiff agreed to loan the funds, and a deed of trust dated and recorded November 5, 2019, was entered into between Defendant, as grantor, and Plaintiff, as beneficiary, to secure payment of $25,000, "in accordance with the terms of a promissory note of even date" and secured by real property in Pierce County, Washington, described as 1125 N. Prospect Street, Tacoma, Washington 98406, Tax Parcel Number: 2745001180. Pl. Ex. 18. These funds were paid back in 30 days.

After the funds were paid back, the Defendant approached the Plaintiff about loaning another $25,000. The Plaintiff agreed, and a deed of trust dated January 9, 2020, and recorded January 17, 2020 ("January 2020 Deed of Trust"), was entered into between WCRE, as grantor, and Plaintiff, as beneficiary, to secure payment of $25,000, "in accordance with the terms of a promissory note of even date" and secured by real property in Pierce County, Washington, described as XXXX S Durango, Tacoma, Washington, 98405, Tax Parcel Number(s): 0220121048, which is the Durango Property. Pl. Ex. 16.

On December 23, 2022, EGE, as grantor, entered into a deed of trust with Colin Macleod and Ian Macleod securing a promissory note of even date in the amount of $800,000. The deed of trust is secured by the South 19th Property, as indicated by the tax account number contained therein. Pl. Ex. 26.

The South 19th Property was also secured by a prior recorded Deed of Trust with Angel Oak Mortgage Solutions LLC ("Angel Oak" and "Angel Oak Deed of Trust"), to secure a promissory note dated September 3, 2021, in the original principal amount of $434,000. Pl. Ex. 23. The Angel Oak Deed of Trust was recorded on September 8, 2021.

A Modification of Deed of Trust dated December 29, 2022, was entered into between the Plaintiff, as beneficiary, and WCRE and EGE, as grantors, by which the parties modified the November 2018 Deed of Trust in the original amount of $377,320.50 secured on real property as therein described and recorded on January 17, 2020, under Pierce County Auditor's File No. 202001170051. Pl. Ex. 27. The parties agreed to replace the collateral property with real property located in Pierce County, Washington at Tax Parcel No.: 0220121111, which is the South 19th Property. Pl. Ex. 27. This was recorded on December 30, 2022.

Another Modification of Deed of Trust also dated December 29, 2022, was entered into between the Plaintiff, as beneficiary, and WCRE, as grantor, by which the parties modified the January 2020 Deed of Trust in the original amount of $25,000, secured on real property as therein described and recorded on January 17, 2020, under Pierce County Auditor's File No. 20200117052. Pl. Ex. 28. The parties agreed to replace the collateral property with the real property located in Pierce County, Washington at Tax Parcel No.: 0220121111, the South 19th Property. Pl. Ex. 28. This too was recorded on December 30, 2022.

The Plaintiff testified that the Defendant informed him that it was necessary to substitute his collateral in order to develop the property. The Defendant testified that she asked Plaintiff to shift his collateral to a different parcel in order to obtain additional

funding. A lender was willing to loan funds on the Durango Property so long as they were in first position.

In December 2022, the Defendant listed the Durango Assemblage for sale, with no success. The listing agreement indicates that the assemblage would support development of 200-300 apartment units and the listing price was $9,750,000. Def. Ex. 5.

Defendant defaulted under the Angel Oak promissory note. A Notice of Trustee's Sale for the South 19th Property was recorded in Pierce County, Washington, on August 2, 2024. The Notice listed a sale date of December 20, 2024. Pl. Ex. 29.

A Trustee's Deed for the South 19th Property was recorded in Pierce County, Washington on December 31, 2024, conveying the property to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as trustee of Angel Oak Mortgage Trust 2023-2, Mortgage-Backed Certificates, series 2023-2, as grantee. Pl. Ex. 30. A Real Estate Excise Tax Affidavit for the South 19th Property was recorded in Pierce County, Washington, on December 31, 2024, for "Trustee's Deed Upon Sale," listing a gross selling price of $463,819.95. Pl. Ex. 32. The Plaintiff was not paid anything from these funds.

The Defendant filed a Chapter 7 bankruptcy petition on March 11, 2025. The Plaintiff timely filed this adversary complaint to determine the dischargeability of debt on June 9, 2025, and the trial was held January 13, 2026.

## CONCLUSIONS OF LAW

The Plaintiff seeks to have the debt owed by the Defendant declared nondischargeable under § 523(a)(2)(A). According to § 523(a)(2)(A), "[a] discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Section 523(a)(2)(A).

The creditor bears the burden of proving the applicability of § 523(a)(2)(A) by a preponderance of the evidence. *In re Sabban,* 600 F.3d 1219, 1222 (9th Cir. 2010) (citing *In re Slyman*, 234 F.3d 1081, 1085 (9th Cir. 2000)). The 9th Circuit consistently holds that in order to establish nondischargeability under § 523(a)(2)(A), the creditor must demonstrate five elements: (1) the debtor made the representations; (2) that at the time the debtor knew they were false; (3) that the debtor made them with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made. *Sabban,* 600 F.3d at 1222.

**A. Representations**

The Plaintiff alleges that the Defendant made false representations in soliciting the various loans. The burden is on the Plaintiff to establish that a misrepresentation was made. To be actionable, it must be a "representation of fact." *Field v. Mans*, 516 U.S. 59, 70 (1995). The representation must be one of existing or past fact and not merely an expression of opinion. *See In re Rubin*, 875 F.2d 755, 759 (9th Cir. 1989); *In re Gonzales*, No. 05-90521-B7, 2007 WL 7216267, at *3 (Bankr. S.D. Cal. Mar. 23, 2007). The Court will evaluate whether Defendant made any actionable representations as to each of the three property transactions at issue.

    1. <u>East L Property</u>

In regards to the East L Property, the Plaintiff alleges in the Complaint that the following representations were made:

(a) The purpose of the loan was renovating and/or developing the East L Property.

(b) The East L Property was a desirable property because of the location.

(c) The loan would be used for the imminent renovating and/or developing of the East L Property.

(d) The Plaintiff was the only lender on the East L Property and fully secured.

(e) Upon completion the East L Property would be sold and Plaintiff would receive his money back along with interest pursuant to the note.

Complaint 3:17–23, ECF No. 1.

In the Complaint, the Plaintiff fails to specify which, if any, of these representations were false. The Defendant admits that she represented that the Plaintiff would have received his original investment of $170,000 plus interest, if he was still secured by the East L Property when it was sold on May 7, 2019. However, the Plaintiff consolidated the $170,000 loan with another existing loan and a new loan from the Defendant when they entered into the Secured Promissory Note on August 17, 2018. This loan was secured by the Durango Property, and the Plaintiff testified on cross that he transferred his security interest in the East L Property in order to get a security interest in the Durango Property. Accordingly, the Defendant was not paid back the $170,000 from the sale of the East L Property, not because of a misrepresentation by the Defendant, but because he did not have a security interest in the East L Property when it was sold. Instead, his security interest was transferred to the Durango Property almost a year prior.

At trial, the Plaintiff also testified that the Defendant misrepresented that he was the only lender on the property. Even if true, any representations regarding the Plaintiff's priority or other encumbrances on the East L Property are irrelevant. The evidence indicates that the Plaintiff did have a first position interest in the East L Property at the time the loan was originated, thus the representation was accurate. If property or services are obtained before the making of any false representation, a representation after the fact will not affect dischargeabilty. *See Bankers Healthcare Group, LLC v. Johnson (In re Johnson)*, 638 B.R. 782, 794–95 (Bankr. C.D. Cal. 2022). The Plaintiff has not met his burden in establishing that the Defendant made any representations regarding the East L Property that would support a § 523(a)(2)(A) claim.[7]

---

[7] At trial and in briefings, the Defendant argued that any claim based on misrepresentations regarding the East L Property was barred by the statute of limitations. At the close of both parties' examination of the

## 2. Durango Property

In regards to the Durango Property, the Plaintiff alleges in the Complaint that the following representations were made:

(a) The purpose of the loan was to build 3 fourplexes or an apartment complex.

(b) The location of the property was desirable because a hospital was being built close to the Durango Property.

(c) The projected sale price of the property would result in a full return on Plaintiff's investment.

(d) The loan was fully secured with the Durango Property and the Plaintiff was the only lender on the Durango Property.

Complaint 5:14–18, ECF No. 1.

Again, the Plaintiff fails to specify in the Complaint which of these representations were false. The Plaintiff also failed to present any evidence that representations regarding the desirability of the location of the property were made, or that any such representations were false. As for a representation regarding the value of the property, the Defendant testified at trial that it was her opinion that the Durango Property was worth approximately $2 million standing alone, and that the Durango Assemblage had a combined value of approximately $10 million. The Plaintiff failed to present any evidence to contradict her valuation. Defendant's valuation is supported by the fact that she listed the Durango Assemblage for $9,750,000 in December 2022, and obtained a loan from independent parties, Colin and Ian Macleod, in the amount of $800,000, secured by a deed of trust on South 19th Property dated December 23, 2022. *See* Def. Ex. 5; Pl. Ex. 26.

The Defendant further testified that the Plaintiff was fully secured on the Durango Property, as the only other encumbrance was a prior security interest of approximately

---

Plaintiff, the Defendant also moved for dismissal on this basis. The Court denied the motion at that time. As the Court concludes that no actionable representations were made regarding the East L Property, it is unnecessary to resolve the statute of limitations defense in this Memorandum Decision.

$190,000. With a total valuation of $2 million, the Plaintiff was fully secured even in second position. Therefore, the evidence indicates that this representation was accurate.

The Defendant denies that she ever represented that the Plaintiff was the only lender on this property and the Secured Promissory Note states that WCRE agrees to pay Plaintiff the $377,320.50, plus interest, for value received which shall include a "second mortgage" on properties owned by WCRE. Pl. Ex. 35. She further testified that the Plaintiff never cared whether he was junior or senior, or which lot his loan was secured by, only that he be paid back in full when the property was sold. The Plaintiffs' own statements corroborate this testimony. The Plaintiff testified that the Defendant allegedly "slipped" at one point and let him know there was another lender on the property. The Plaintiff testified on direct that he was fine with that so long as he was in first place. These statements support the Defendant's testimony and contradict the Plaintiff's allegation that any representation about the existence or nonexistence of other lenders on the Durango Property, even if true, were material.

In addition, the Plaintiff claims that the Defendant misrepresented that he was the only lender, not that he was in first position. Any such misrepresentation is irrelevant since the evidence indicates that he was fully secured on the Durango Property, no matter what position he was in. The Plaintiff has failed to meet his burden in establishing that the Defendant made any representations that would support a § 523(a)(2)(A) claim as to the Durango Property.

3. South 19th Property

In regards to the South 19th Property, the Plaintiff alleges in the Complaint that the Defendant represented that:

(a) To develop the Durango Property, his security interest needed to be removed.

(b) The location of the South 19th Property was worth more than the Durango Property because it had a home on it and the Durango Property was bare land.

(c) The Plaintiff's loans were fully secured and he would be the only secured creditor.

Complaint 6:22–24 & 7:1–2, ECF No. 1.

The Defendant admits that she in fact did represent to the Plaintiff that it was necessary to remove his security interest to develop the Durango Property. The Defendant testified that due to higher interest rates and delays caused by the pandemic and zoning changes, she needed additional capital to cover the carrying costs—additional capital that the Plaintiff was unwilling or unable to provide—and that she had found additional funding, but that the new lender was only willing to loan the funds if in first position. The Defendant's explanation is credible and this representation is not actionable because the Plaintiff has failed to prove that it was false.

The Plaintiff also failed to present any evidence to corroborate his claim in the Complaint that she represented that the South 19th Property was more valuable than the Durango Property. Both parties testified at trial that she represented that she needed to release his lien from the Durango Property and move it to another parcel in the Durango Assemblage to obtain additional funding. This is precisely what occurred.

The Plaintiff's claim that she represented he was the only lender on the South 19th Property suffers from the same deficiencies as with the Durango Property. The number of lenders is irrelevant. What is relevant is representations regarding priorities and whether the Plaintiff was fully secured. The Defendant testified that at the time the Plaintiff moved his security to the South 19th Property, there was about $1.2 million in loans ahead of him. With a valuation of $2 million on this parcel, he was again fully secured at the time his deed of trust was transferred to the South 19th Property. This valuation is also supported by the fact that the Durango Assemblage was listed for sale at a price of $9,750,000, and Colin Macleod and Ian Macleod agreed to loan $800,000 secured by a deed of trust on the South 19th Property in December 2022. The Plaintiff has failed to meet his burden to establish that the Defendant made any representations that would render the debt nondischargeable under § 523(a)(2)(A).

**B. Intent**

Even if the Plaintiff could satisfy the misrepresentation requirement, his § 523(a)(2)(A) claim fails because he is unable to establish an intent to deceive. The burden is on the Plaintiff to show that the Defendant made a false representation with the intent to deceive.

Because direct evidence of intent to deceive is rarely available, "the intent to deceive can be inferred from the totality of the circumstances, including reckless disregard for the truth." *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167–68 (9th Cir. BAP 1999). A bankruptcy court may find requisite intent "where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth." *Khalil v. Developers Sur. and Indem. Co. (In re Khalil)*, 379 B.R. 163, 174–75 (9th Cir. BAP 2007) (discussing intent to deceive in the context of § 727(a)). Furthermore, recklessness alone does not equate to fraudulent intent; it is only probative of intent. *Khalil*, 379 B.R. at 174. "The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud" the creditor. *Id.* at 175.

The Plaintiff alleges the Defendant represented that she would use his funds to develop the various properties and that she never intended to use his funds for that purpose. Further, that she "knew or should have known that the properties could not be developed as promised." Pl. Trial Brief 7:17–18, ECF No. 11. The evidence does not support these allegations.

The Defendant testified that the initial loan on the East L Property was used to fund the cost of putting in a road. The evidence establishes that the East L Property was land locked when purchased. No contrary evidence was presented. The Defendant testified that the consolidated loan was used to fund the cost of entitlements on the Durango Property. Again, the Plaintiff failed to present any evidence that the funds were not used for this purpose.

In regards to the Durango Assemblage, the Defendant's testimony regarding her intentions in developing these properties was credible. Although the initial plan was to

develop 30 plus townhomes, zoning changes made this no longer possible. The Defendant therefore pivoted and instead attempted to develop the properties and sell as a buildable lot for a 200 plus apartment building. The Defendant listed the Durango Assemblage for sale in December 2022, at a price of $9,750,000. If the property had sold, the Plaintiff would have been paid in full. However, a sale did not occur. Due to the inability to sell and delays caused by the county review process, zoning changes, the pandemic, and rising interest rates, the Defendant's plan for the Durango Assemblage did not work out.

A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions. 4 *Collier on Bankruptcy* ¶ 523.08 (16th ed. 2026). This is an unfortunate situation where the Plaintiff's intent to sell the Durango Assemblage at a profit and repay her lenders failed to materialize. The fact that the Defendant successfully completed multiple prior projects, including projects relying on funds loaned by the Plaintiff that were paid back, that she paid back a 2019 loan of $25,000 within 30 days as promised, and paid the Plaintiff approximately 44 payments of $2,201.11 each month from March 2019 to June 2023, indicate that she intended to successfully complete these projects and pay back the Plaintiff at the time the loans were originated. Unfortunately, the Defendant's plan ultimately failed and the property on which the Plaintiff held a security interest (South 19th Property) went into foreclosure. The totality of the circumstances in this case do not establish deceitful intent by the Defendant that would render the debt nondischargeable under § 523(a)(2)(A).

### C. Justifiable Reliance

The Plaintiff's claim also fails under the reliance element. Under § 523(a)(2)(A), a plaintiff does not need to prove that reliance was reasonable but rather that it was "justifiable". *In re Eashai*, 87 F.3d 1082, 1090 (9th Cir. 1996). Subsection (A) employs a subjective standard and examines whether the reliance was justifiable. *Field*, 516 U.S. at 73–75. This standard depends upon the knowledge and experience of the person to whom

the representations were made. *In re Storer*, 380 B.R. 223, 232 (Bankr. D. Mont. 2007). The qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, are considered rather than application of a community standard of conduct to all cases. *Field*, 516 U.S. at 71. The Supreme Court further explained the nature of justifiable reliance as follows:

> [A] person is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus, a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses."

*Id.*

Under the subjective standard of § 523(a)(2)(A) and in looking at the qualities of the Plaintiff, the Court concludes that it was not justifiable for the Plaintiff to rely on any alleged misrepresentations regarding his security interest and likelihood that the proposed projects would be successful. It is undisputed that the Defendant was an experienced developer and real estate agent. The Plaintiff, however, also has experience in real estate transactions. Outside of his transactions with the Defendant, the Plaintiff admits that he has bought, sold, or held five different parcels of real property, both in Washington state and Texas.

His level of sophistication is exhibited in the August 14, 2018 email he sent to the Defendant. Not only did he propose corrections to the draft Secured Promissory Note, including striking certain language, but he also prepared and attached a detailed payment spreadsheet. Def. Ex. 4. This email exhibits a sophisticated understanding of the terms of the transaction and payment terms.

The Court also does not find credible the Plaintiff's testimony that he never received copies of several of the executed documents. In regard to the Secured Promissory Note, the Plaintiff was actively involved in drafting this agreement and admittedly was aware of its existence. Thus, the onus was on him to request a copy of the final agreement if it was not received.

The Plaintiff's allegation that he did not receive a copy of the November 2018 Deed of Trust or the March 11, 2019 Full Reconveyance is also not credible. The November 2018 Deed of Trust indicates at the top:

> After Recording, Return To:
> Peter R. Euler
> 1018 Caprice Drive
> Grand Saline, TX 75140

Pl. Ex. 15. This is the Plaintiff's correct address.

The March 11, 2019 Full Reconveyance provides that it be returned to First American Title Insurance Company after recording. The Defendant testified that these documents would have been mailed to the Plaintiff, not by her, but the escrow company or listed trustee. According to RCW 65.04.090, the recording office is required to "thereafter either electronically transmit or deliver it to the party leaving the same for record or to the address on the face of the document." Similar to a certificate of mailing, the above creates a rebuttable presumption of its receipt. *See, e.g. Cuna Mut. Ins. Group v. Williams (In re Williams)*, 185 B.R. 598, 599 (9th Cir. 1995). The law in the Ninth Circuit is that denial of receipt does not rebut a presumption of receipt. *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir. 1991). In order to overcome the presumption, specific objective evidence showing nonreceipt is required. *Williams*, 185 B.R. at 600. The Plaintiff has failed to present any evidence to rebut the presumption that the documents were mailed to him directly after recording by the assessor's office or by the trustee handling escrow.

Considering the Plaintiff's level of expertise and involvement in multiple real estate transactions, the Court concludes that he did not justifiably rely on any alleged misrepresentations by the Defendant regarding the loan of these funds.

For each of the reasons stated above, the Plaintiff has failed to establish that the debt owed by the Defendant is nondischargeable under § 523(a)(2)(A).[8]

/ / / End of Memorandum Decision / / /

---

[8] In the prayer for relief in the Complaint, the Plaintiff alleged that the Defendant's actions violated the Washington Consumer Protection Act, RCW 19.86. Complaint 10:1–3, ECF No. 1. The Court need not address this claim as no argument or evidence was presented in support. As the Court concludes that the debt is dischargeable, it is also unnecessary to rule on Plaintiff's claim that the actions of the Defendant's entities should be imputed to the Defendant.